IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01216-KAS

E. A. N.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court[2] on the **Social Security Administrative Record** [#6], filed June 30, 2022, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On September 7, 2022, Plaintiff filed an Opening Brief [#10] (the "Brief"). Defendant filed a Response [#13] in opposition, and Plaintiff filed a Reply [#14]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#7, #15]; *Reassignment* [#16].

## I. Background

On May 3, 2019, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning May 17, 2017. Tr. 15, 18, 138.[3] On January 21, 2021, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 151. On review of this decision, the Appeals Council issued a remand order directing the ALJ to further consider and analyze certain issues at steps four and five of her ruling. Tr. 15. On November 15, 2021, the ALJ issued a second unfavorable decision. Tr. 30.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2022, and that she had not engaged in substantial gainful activity ("SGA") since May 17, 2017, the alleged onset date. Tr. 18. The ALJ then found that Plaintiff suffers from three severe impairments: (1) chronic Lyme disease, (2) asthma, and (3) obesity. Tr. 18. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." Tr. 21.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work"[4] with the following limitations:

> [T]he claimant could only lift or carry up to 10 pounds frequently, and 10 pounds occasionally (from very little, up to 1/3 of an 8-hour workday[)]; could stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday; could sit (with normal breaks) for a total of six hours in an

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 6 through 6-13, by the sequential transcript numbers instead of the separate docket numbers.

[4] "Sedentary work" is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

eight-hour workday; and could perform pushing and pulling motions with her upper and lower extremities, within the aforementioned weight restrictions. The claimant should avoid unprotected heights and moving machinery. The claimant should be restricted to a "relatively clean" work environment (low levels of pollutants and stable temperatures including avoiding concentrated exposure to extreme cold and avoid concentrated exposure to extreme heat). The claimant could perform the following postural activities occasionally: climbing, stooping, crouching, kneeling, crawling. She should not climb any ladders, ropes, or scaffolds on the job. The claimant should avoid concentrated exposure to noise such as jackhammers.

Tr. 22. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as an information analyst/information manager. Tr. 29. She therefore found Plaintiff not disabled at step four of the sequential evaluation. Tr. 29-30. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter

been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks, citation, and modification omitted).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant

work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B. Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be made on the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the medical opinion evidence, and (2) improperly rejecting Plaintiff's description of her fatigue from her severe impairments. *Brief* [#10] at 2. Both arguments pertain to the ALJ's findings at

step four of the evaluation process. *Reply* [#14] at 1. The Court begins with the second argument, as it has some impact on Plaintiff's first argument.

## A.    Fatigue

Plaintiff argues that the ALJ improperly rejected Plaintiff's description of her fatigue in the ALJ's formulation of the RFC. *Brief* [#10] at 14.

Pursuant to 20 C.F.R. § 404.1529(a), the ALJ must determine whether there is objective medical evidence showing "a medical impairment(s) which could reasonably be expected to produce the . . . symptoms alleged." *See also* 20 C.F.R. § 404.1529(b) ("[A claimant's] symptoms, such as . . . fatigue . . . , will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). If the ALJ finds that there is such objective medical evidence, she must next "evaluate the intensity and persistence of [the claimant's] symptoms so that [the Commissioner] can determine how [the claimant's] symptoms limit [her] capacity for work." 20 C.F.R. § 404.1529(c)(1). Here, Plaintiff only argues that the ALJ erred at the second step of this evaluation. *Brief* [#10] at 16.

At this second step, an ALJ must use "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms" such as fatigue. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3, 6 (Oct. 25, 2017). In so doing, the Court primarily considers seven non-exclusive factors:

(i) [The claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [her] pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). The ALJ is not required to discuss every factor. SSR 16-3p, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, [the Commissioner] will not discuss that specific factor in the determination or decision because it is not relevant to the case."). Further, the ALJ is not required to engage in "a formalistic factor-by-factor recitation of the evidence" in this context. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The Court notes that, throughout her decision, the ALJ repeatedly acknowledged Plaintiff's complaints of fatigue. *See, e.g.*, Tr. 23-29. In fact, the ALJ specifically formulated parts of Plaintiff's RFC to account for Plaintiff's fatigue. Tr. 29. Thus, the ALJ did not discount Plaintiff's fatigue but, rather, merely found that the intensity, persistence, and limiting effects of such fatigue were not so great as to bar sedentary work, even when combined with other limitations described in the RFC. Tr. 22, 29. Ultimately, for the reasons described below, the Court finds that substantial evidence supports the ALJ's decision. The Court may not reweigh the evidence despite the presence of some

evidence which could support a contrary finding. *See Lax*, 489 F.3d at 1084; *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 810 (10th Cir. 2021) ("But while these arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to invitations to reweigh the evidence, which we cannot do.").

### 1.     Factor (i)

Regarding the first factor, i.e., Plaintiff's daily activities, Plaintiff is correct that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Brief* [#10] at 17 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011)). However, "the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations." *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017). In other words, sporadic performance of household tasks or work may not alone be used to demonstrate a claimant's ability to work, but evidence of such performance may be considered in determining its consistency with all the other evidence in the record.

Here, the ALJ determined that "[s]ome of the claimant's daily activities are inconsistent with the degree of limitation she alleged." Tr. 26. In support, the ALJ noted that Plaintiff could perform some household chores such as vacuuming, weeding, doing laundry, and washing dishes; could drive and go out alone; could shop in stores and online; could count change, handle a savings account, and use a checkbook or money order; could watch television and read; could spend time with her husband, son, daughter-in-law, and grandchild; and was able to pack in order to move to Colorado. Tr. 26.

Plaintiff argues that the ALJ "overstated Plaintiff's abilities." *Brief* [#10] at 17. The Court agrees that many of the daily activities cited by the ALJ are sporadic, at best. *See id.* at 17-18 (citing Tr. 79, 81, 83, 382-83, 532). However, the ALJ acknowledged this in her decision, discussing how Plaintiff's fatigue affected how she approached her daily activities based on her energy levels. Tr. 24. Importantly, Plaintiff could, at least sometimes, perform these daily activities, many of which clearly involve more than is required by the definition of sedentary work, which generally involves sitting but may "occasionally" require walking and standing. 20 C.F.R. § 404.1567(a). Given the ALJ's thorough discussion of Plaintiff's daily activities and formulation of an RFC based on sedentary work which incorporated Plaintiff's "persistent complaints of fatigue," the Court cannot find that the ALJ committed reversible error regarding Plaintiff's daily activities.

### 2.    Factors (ii)-(iii)

Plaintiff asserts that the ALJ failed to discuss the second and third factors, i.e., the location, duration, frequency, and intensity of symptoms, and precipitating and aggravating factors. *Brief* [#10] at 18. In support, Plaintiff cites evidence in the record regarding the severity of Plaintiff's fatigue. *Id.* (citing Tr. 531, 534, 812, 814, 879, 945, 1281, 1716, 1720). However, the Court disagrees with Plaintiff's premise, because the ALJ did specifically address these issues.

First, the ALJ noted that Plaintiff "consistently reported having fatigue, low energy, and problems concentrating. Tr. 24 (citing Tr. 525-797 (Ex. 4F), 798-903 (Ex. 5F), 922-87 (Ex. 7F), 988-1012 (Ex. 8F), 1109-41 (Ex. 11F), 1319-41 (Ex. 22F), 1356-1529 (Ex. 24F)). She acknowledged that Plaintiff's "fatigue affected her daily activities." Tr. 24 (citing Tr. 1166-1202 (Ex. 13F)). She stated that Plaintiff "needed to rest when doing household

chores or yardwork." Tr. 24 (citing Tr. 1173 (Ex. 13F/8)). She noted that Plaintiff "needed to prioritize tasks based on her energy levels," and that she "found it difficult to get enough exercise because of her fatigue." Tr. 24 (citing Tr. 814 (Ex. 5F/17), 836 (Ex. 5F/39)). She acknowledged that, in June 2019, Plaintiff "complained that she could only go to the grocery store but could tolerate no additional activity that day." Tr. 24 (citing Tr. 916 (Ex. 6F/19)). Finally, she stated that these complaints had led to her chronic fatigue diagnosis. Tr. 24.

Yet, the ALJ determined that "the medical record is not entirely consistent with the degree of limitation alleged by the claimant." Tr. 24. In so doing, she considered evidence (as discussed more in-depth below) that Plaintiff's chronic Lyme disease, including the symptom of fatigue, was treated "conservatively with some prescription medication and various supplements." Tr. 24. The ALJ further considered evidence showing that Plaintiff's "physical exams were largely unremarkable." Tr. 24. In support, the ALJ cited evidence that (1) "[w]hile there were some isolated instances of decreased range of motion in her spine and left shoulder, and decreased strength in her left shoulder, these impairments improved with physical therapy"; (2) "[g]enerally, there was no reduced range of motion and her gait was steady"; (3) "[s]he had five-out-of-five strength in all muscle groups with normal bulk and tone, including the strength and tone in her left upper extremity"; (4) "[h]er gait was casual and she could toe, heel, and tandem walk"; and (5) "[h]er straight leg raise test was negative." Tr. 24 (citations omitted).

The Court agrees with Plaintiff that some of these references do not appear to obviously implicate the severity of Plaintiff's fatigue, such as range of motion in her spine and shoulder, her ability to toe, heel, and tandem walk, and the straight leg raise test. *See*

*Brief* [#10] at 13; *Reply* [#14] at 3. However, other references do implicate Plaintiff's fatigue. *See, e.g.*, *Schmitzer v. O'Malley*, No. 1:22-cv-01038-JLT-BAM, 2024 WL 1077145, at *11 (E.D. Cal. Mar. 12, 2024) ("While the ALJ did not expressly discuss fatigue in explaining why she discounted [the physician's] opinion, the ALJ addressed findings from the medical record that suggest the fatigue was less than disabling, including an attention span within normal limits; working memory, recall memory, and executive function within normal limits; a linear thought process; normal musculoskeletal strength; and no evidence of gait abnormality.").

Pursuant to SSR 14-1p, 2014 WL 1371245, at *3 (Apr. 3, 2014), symptoms of chronic fatigue syndrome may include postexertional malaise lasting more than 24 hours; self-reported impairment(s) in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities; sore throat; tender cervical or axillary lymph nodes; muscle pain; multi-joint pain without joint swelling or redness; headaches of a new type, pattern, or severity; waking unrefreshed; muscle weakness; disturbed sleep patterns; visual difficulties; orthostatic intolerance; respiratory difficulties; cardiovascular difficulties; gastrointestinal discomfort; and/or urinary or bladder problems. Muscle weakness is one symptom, and the ALJ pointed to decreased strength in Plaintiff's left shoulder and the five-out-of-five strength in all her muscle groups. Tr. 24 (citations omitted). Short-term memory and concentration issues are another symptom, and, elsewhere in the opinion, the ALJ noted that "mental status findings were consistently normal, revealing at all times that the claimant was alert and oriented times 3, her recent and remote memory were intact, her attention, concentration, and fund of knowledge were intact, and her speech was fluent

and coherent." Tr. 25 (citations omitted). In addition, although gait is not specifically mentioned by SSR 14-1p, many courts have discussed the potential connection between a claimant's gait and fatigue. *See, e.g.*, *Martin v. Colvin*, No. 6:12-CV-2306-PK, 2014 WL 2772551, at *6, 8-9 (D. Or. June 18, 2014) (discussing a physician's opinion that the claimant's "pain symptoms altered his gait, giving him a short stride and a gluteal lurch that would presumably worsen with fatigue"). The Court also notes that there is no evidence which has been brought to the Court's attention regarding many of these potential fatigue symptoms.

As previously noted, the ALJ need not specifically "reference everything in the administrative record," *Wilson*, 602 F.3d at 1148, and the ALJ is not even required to engage in "a formalistic factor-by-factor recitation of the evidence" in this context, *Qualls*, 206 F.3d at 1372. Here, although the discussion is not as robust as might be desired, the ALJ did not fail to adequately discuss the second and third factors, i.e., the location, duration, frequency, and intensity of symptoms, and precipitating and aggravating factors, in her opinion. Accordingly, the Court cannot find that the ALJ committed reversible error regarding her discussion of the location, duration, frequency, and intensity of Plaintiff's symptoms, as well as precipitating and aggravating factors.

### 3.   Factors (iv)-(vi)

Plaintiff addresses the next three factors together, i.e., the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate her fatigue; treatment, other than medication, she receives or has received for relief of her fatigue; and any measures she uses or has used to relieve her fatigue. *Brief* [#10] at 18-19; 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). Plaintiff does not take issue with the ALJ's

discussion of her treatments, including prescription medication, acupuncture, CBD oil, and therapy. *Brief* [#10] at 18-19. Rather, she states that the ALJ's discussion "does little to explain the ALJ's conclusion that Plaintiff is not as limited as she described." *Id.* at 19. Plaintiff cites records which indicate that, "despite her efforts, no relief was achieved." *Id.* (citing Tr. 499, 511, 544, 929).

Plaintiff points out that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Brief* [#10] at 19 (quoting SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017)). However, the ALJ never stated otherwise. Rather, as the ALJ noted, Plaintiff was "consistently encouraged to exercise" to help her fatigue and was prescribed physical therapy to "help with her deconditioning and painful areas of her body." Tr. 24 (citing Tr. 809 (Ex. 5F/12), 1117 (Ex. 11F/9)). Courts have found that reports of disabling fatigue have been rejected where, for example, "multiple treating sources have advised the claimant to remain active with work and exercise (swimming and walking)." *Romero v. Colvin*, No. 13-cv-02744-LTB, 2015 WL 3542783, at *10 (D. Colo. June 4, 2015). Although the record provides some evidence that Plaintiff's efforts resulted in little relief, the ALJ determined that, even considering such, Plaintiff's fatigue was not disabling but could be accommodated by limiting her to sedentary work. As a result, in light of the ALJ's thorough discussion, the Court cannot find that the ALJ committed reversible error in connection with her analysis of these factors.

4.      Factor (vii)

This factor is essentially a "catch-all," where the Court considers any other factors concerning functional limitations and restrictions due to symptoms such as fatigue. 20 C.F.R. § 404.1529(c)(3)(vii). Here, Plaintiff seeks to add "one specific credibility enhancing factor: her strong work history." *Brief* [#10] at 19.

The term "credibility" is no longer used in the Commissioner's assessment of claims. *See* SSR 16-3p, 2017 WL 5180304, at *2 (explaining that the purpose of the ruling was to "eliminat[e] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as [the] regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character"). However, the Commissioner continues to follow the same "fundamental rule . . . that 'if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (quoting SSR 16-3p).

Plaintiff asserts that "[a]gency policy set forth in § 404.1529(c)(3) and SSRs 96-8p and 16-3p require the ALJ to consider a claimant's willingness to work as part of assessing the consistency of her complaints and described limitations." *Brief* [#10] at 19. Plaintiff does not provide a pin cite to her SSR 96-8p reference, which undermines the clarity of her argument. She may be referring to the ALJ's duty to base the RFC assessment on "*all* relevant evidence in the case record, such as . . . [e]vidence from attempts to work." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (emphasis in

original). Similarly, Plaintiff does not provide a pin cite to her SSR 16-3p reference; however, the Court construes this sentence to refer to the ALJ's general duty to consider all relevant evidence. SSR 16-3p, 2017 WL 5180304, at *3, 6.  As for 20 C.F.R. § 404.1529(c)(3), that regulation states that the Commissioner "will consider all of the evidence presented, including information about [the claimant's] prior work record."

Plaintiff states that she had "20 years of progressively increasing earnings before her alleged disability onset," which was May 17, 2017. *Brief* [#10] at 19 (citing Tr. 323-25); Tr. 15. However, the Court does not read the cited work history records in this manner. First, Plaintiff appears to have had no reported computational yearly earnings after 1995 and before 2008, except for a very small amount in 2001; thus, if she had earnings in those years, the cited records do not support that assertion. Tr. 324. Plaintiff does have reported earnings from 2008 through 2017, however. Tr. 324-35. Regardless, the ALJ was aware of and considered Plaintiff's prior work history. Although the ALJ does not explicitly reference Tr. 323-35 (Exhibit 7D), she *does* explicitly reference *information* from that record, discussing how "[e]arnings records document the claimant earned $32,179 in 2017," information taken directly from Tr. 325. *See* Tr. 18. Thus, the ALJ obviously considered this record as part of her decision. As noted above, the ALJ is not required to engage in "a formalistic factor-by-factor recitation of the evidence." *See Qualls*, 206 F.3d at 1372. Given that it is clear that the ALJ did not overlook this record in her consideration of Plaintiff's claim, the Court cannot find that that the ALJ committed reversible error on this issue.

In short, the Court finds that the ALJ did not commit reversible error by improperly rejecting Plaintiff's description of her fatigue in the formulation of the RFC.

**B.      Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Claude Fortin ("Fortin") and Sheri Fox, PA-C ("Fox"). *Brief* [#10] at 10-13.

An ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[5] Instead, "the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as 'a medical source's familiarity with the other evidence in a claim.'" *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *2 (10th Cir. Dec. 23, 2022) (quoting 20 C.F.R. § 404.1520c(c)). "The two most important factors are supportability and consistency with the entire record." *Roy on behalf of Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)). "The ALJ is therefore required to explain how she considered the supportability and consistency of a medical source's opinion, and 'may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate." *R.L.M. v. Kijakazi*, No. 22-cv-03179-NYW, 2023 WL 8355963, at *8 (D. Colo. Dec. 1, 2023) (modifications in original) (quoting 20 C.F.R. § 404.1520c(b)(2)).

Regarding supportability, the ALJ must consider whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and

---

[5] Because Plaintiff filed her application for disability insurance benefits after March 27, 2017, *see* Tr. 18, 138, her claim is subject to the newer rules regarding consideration of medical opinions. *See Roy on behalf of Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (citing 20 C.F.R. § 404.1520c). "[T]he treating physician rule was abrogated by the new regulations." *S.C. v. Kijakazi*, No. 22-cv-1158-LTB, 2023 WL 8642076, at *3 (D. Colo. Dec. 4, 2023).

supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *R.L.M.*, 2023 WL 8355963, at *8.

Regarding consistency, the ALJ must compare the medical source's opinions and "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

"The Regulations do not 'prescribe the depth at which the ALJ must discuss' the factors of supportability and consistency." *R.L.M.*, 2023 WL 8355963, at *8 (quoting *Harp v. Kijakazi*, No. 1:21-cv-00275-KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022)). "But at minimum, the ALJ must 'provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions.'" *Id.* (modification in the original) (quoting *Zambrano v. Kijakazi*, No. 1:20-cv-01356-KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022)).

Here, Plaintiff argues that the ALJ should have found the opinions of Dr. Fortin and PA-C fox to be "at least as persuasive as the opinions of the non-examining Agency medical consultants." *Brief* [#10] at 13. If the ALJ had done so, Plaintiff states that the ALJ would have been required to then examine the remaining factors, i.e., relationship with the claimant, specialization, and other factors such as a medical source's familiarity with

the other evidence in a claim. *Id.* Plaintiff argues that examining these other factors would then have weighed in her favor, and that the ALJ would have had to find the opinions of Dr. Fortin and PA-C Fox to be persuasive. *Id.* Plaintiff does not provide independent analysis of Dr. Fortin's opinions and PA-C Fox's opinions, essentially asserting that the ALJ made the same analytical errors in both. *See Motion* [#10] at 9-13.

After summarizing Dr. Fortin's opinion,[6] the ALJ noted that he "supported his opinion with reference to his treatment of the claimant, including the claimant's chronic fatigue, brain fog, and daily headaches," but that his "physical exams of the claimant were unremarkable and did not support his opinion." Tr. 27. The ALJ stated that "[t]he evidence of the claimant's overall unremarkable physical exams is inconsistent with Dr. Fortin's opinion," given that, by way of example, "the claimant had full strength and range of motion in all extremities, which is inconsistent with Dr. Fortin's manipulative limitations," and that "the claimant could perform household chores and was encouraged to exercise, which is inconsistent with Dr. Fortin's postural limitations." Tr. 27. The ALJ further determined that "Dr. Fortin's opinion is also internally inconsistent as he changes his restrictions on how much the claimant could perform exertional or postural activities

---

[6] "[T]he undersigned [ALJ] considered the opinion of Dr. Claude Fortin, the claimant's neurologist. Dr. Fortin opined that the claimant could sit for four hours, stand for two hours, and walk for one hour during an eight-hour workday. Later in his opinion, Dr. Fortin opined that the claimant could sit for two hours, and stand and walk for one hour during a normal workday. She could use her bilateral upper extremities for repetitive grasping and fine manipulation, but not for pushing and pulling. The claimant could use her bilateral lower extremities for repetitive movements in operating foot controls. She could occasionally lift and carry up to ten pounds, bend, and reach above shoulder level. The claimant could not squat, stoop, crawl, or climb. Later in his opinion, Dr. Fortin found the claimant could only occasionally lift and carry up to five pounds [and] additionally opined that the claimant had a moderate restriction in exposure to temperature extremes, humidity, and pulmonary irritants. The claimant could have no exposure to unprotected heights, moving machinery, or driving automotive equipment. In an earlier opinion from November 2019, Dr. Fortin concluded the claimant was unable to work in her current condition, but could potentially return to work in May 2020." Tr. 27 (internal citations omitted).

without explanation." Tr. 27. For these reasons, the ALJ found Dr. Fortin's opinion to be unpersuasive.

After summarizing PA-C Fox's opinion,[7] the ALJ noted that PA-C Fox "supported her opinion with specific reference to her treatment of the claimant, including the claimant's pain and muscle atrophy," but that "[t]he evidence of the claimant's overall unremarkable physical exams is inconsistent with [the] opinion." Tr. 27. The ALJ stated that, for example, "the claimant had full strength and range of motion in all extremities, which is inconsistent with PAC Fox's manipulative limitations," and that Plaintiff "could perform household chores and was encouraged to exercise, which is inconsistent with PAC Fox's postural limitations." Tr. 27-28. In addition, with respect to PA-C Fox's diagnosis that Plaintiff had a mild cognitive impairment, the ALJ noted that "there is no support for this diagnosis in the longitudinal record," that "[h]er mental exams were unremarkable overall," that "[t]he claimant was alert and oriented in all spheres," and that "[h]er recent and remote memory were intact." Tr. 28 (citations omitted). The ALJ recognized Plaintiff's complaints "of short-term memory loss and lack of focus caused by her chronic fatigue," but, as she had previously discussed, she found that "the evidence is consistent with finding no more than a mild limitation in understanding, remembering,

---

[7] "[T]he undersigned [ALJ] considered the opinion of Sheri Fox, PAC, the claimant's own treatment provider. PAC Fox opined that the claimant could sit, stand, and walk for one hour in an eight-hour workday. The claimant could not grasp, push, pull, or perform fine manipulation with either upper extremity. The claimant also could not use her feet for repetitive movements as in operating foot controls. PAC Fox further opined that the claimant could occasionally lift and carry up to ten pounds and could rarely lift up to twenty pounds. Later in the same opinion, PAC Fox found the claimant could never lift or carry any weight. The claimant could occasionally bend, but could not squat, stoop, crawl, or climb. She could occasionally reach above shoulder level, but could not hold it. PAC Fox found the claimant was completely restricted in being around unprotected heights, moving machinery, temperature changes, exposure to pulmonary irritants, and driving automotive equipment. The claimant would miss more than three times a month, and would have frequent interruptions and rest breaks. Overall, PAC Fox concluded that the claimant was unable to work." Tr. 27 (internal citations omitted).

or applying information." Tr. 28 (citations omitted). For these reasons, the ALJ found PA-C Fox's opinion to be unpersuasive.

### 1.    Consistency and the Longitudinal Medical Record

First, Plaintiff argues that the ALJ erred in her consistency analysis as to both medical providers because the longitudinal medical record is consistent with their opinions. *Brief* [#10] at 11-13. Plaintiff supports this argument with an in-depth recitation of evidence in the record that is consistent with their opinions. *Id.* However, the Court agrees with Defendant that this discussion essentially amounts to an invitation to reweigh the evidence. *Response* [#13] at 14 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (noting that the reviewing court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner). Although the record contains evidence which demonstrates *some* consistency between the evidence and the providers' opinions, as Plaintiff thoroughly points out, there is also evidence in the record which demonstrates some *in*consistency. The ALJ noted that "[t]he evidence of the claimant's overall unremarkable physical exams is inconsistent with Dr. Fortin's opinion," providing examples that "the claimant had full strength and range of motion in all extremities, which is inconsistent with Dr. Fortin's manipulative limitations," and that "the claimant could perform household chores and was encouraged to exercise, which is inconsistent with Dr. Fortin's postural limitations." Tr. 27. The ALJ also noted that "Dr. Fortin's opinion is also internally inconsistent as he changes his restrictions on how much the claimant could perform exertional or postural activities without explanation." Tr. 27. As for PA-C Fox's opinion, the ALJ found that "[t]he evidence of the claimant's overall unremarkable physical exams is inconsistent with [the] opinion." Tr. 27. The ALJ supported this assessment by

stating "the claimant had full strength and range of motion in all extremities, which is inconsistent with PAC Fox's manipulative limitations," and that Plaintiff "could perform household chores and was encouraged to exercise, which is inconsistent with PAC Fox's postural limitations." Tr. 27-28.

In the absence of any legal error, the Court must defer to the ALJ's decision so long as it is supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, __, 139 S. Ct. 1148, 1154 (2019). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks, citation, and modification omitted). The ALJ's consistency analysis is supported by substantial evidence in finding that the providers' opinions were not entirely consistent with the record.

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with her consideration of either Dr. Fortin's opinion or PA-C Fox's opinion regarding consistency and the longitudinal medical record.

### 2.    Consistency and Laboratory Findings

Next, Plaintiff argues that the ALJ erred by finding that the medical providers' opinions were inconsistent with the record, which contained few abnormal physical findings. *Brief* [#10] at 10. Plaintiff acknowledges that the record contains few abnormal physical findings on examination, but she asserts that both providers identified positive laboratory findings indicating the presence of hypoadrenalism and chronic viral infections,

including Epstein-Barr Virus and cytomegalovirus, with the most common symptom of each being fatigue. *Id.* (citing Tr. 623, 932, 953). Plaintiff states that both providers relied on Plaintiff's abnormal laboratory results in assessing her symptoms and formulating her treatment plan and, thus, she takes issue with the fact that the ALJ did not mention the laboratory results in her findings. *Id.* Relatedly, Plaintiff argues that, "[g]iven that the majority of Plaintiff's treatment is for fatigue, the ALJ drew no 'link' between the normal examination findings and her persistent complaints of fatigue, multiple appointments with specialists, and treatment ranging from supplements, cognitive behavioral therapy, physical therapy, and functional medicine to a CPAP machine and prescription medication." *Id.* at 11 (internal footnotes providing citations omitted).

However, as Defendant notes, Plaintiff has not explained how any of these laboratory findings would change the ALJ's analysis of the physical limitations assessed by either provider due to Plaintiff's fatigue. *Response* [#13] at 13. The precise cause of Plaintiff's fatigue is not the issue here, but rather how the symptom of fatigue manifests and impacts Plaintiff's RFC. Here, there is no argument that the ALJ failed to analyze Plaintiff's fatigue as part of the RFC, and therefore, as Defendant notes, any error in finding the basis for that fatigue is harmless. *Id.* at 13-14; *see also Brief* [#10] at 3 n.1 (discussing the ALJ's analysis of fatigue); *see also supra* § III.A. (discussing the ALJ's consideration of fatigue).

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with her consideration of either Dr. Fortin's opinion or PA-C Fox's opinion regarding consistency and laboratory findings.

### 3.    Additional Regulatory Factors

Finally, Plaintiff argues that, because the ALJ's consistency analysis was faulty, the ALJ should have found the opinions of Dr. Fortin and PA-C Fox at least as persuasive as the opinions of the non-examining Agency medial consultants. *Brief* [#10] at 13. In other words, Plaintiff contends that the ALJ should have considered the remaining factors under 20 C.F.R. § 404.1520c(c), i.e., the providers' relationships with Plaintiff, the providers' specializations, and other factors such as the providers' familiarity with the other evidence pertaining to the claim. *Id.*; *see Mileto*, 2022 WL 17883809, at *2 (noting that the ALJ must consider medical opinions' persuasiveness under § 404.1520c(c)'s five factors).

Pursuant to 20 C.F.R. § 404.1520c(b)(3), when the Commissioner finds "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, [the Commissioner] will articulate how [the Commissioner] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." Here, given that the Court finds that the ALJ did not commit reversible error in her analysis regarding consistency and/or supportability, the ALJ was not required to examine the remaining statutory factors.

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with either Dr. Fortin's opinion or PA-C Fox's opinion regarding failure to examine factors other than supportability and consistency.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Commissioner's decision that Plaintiff is not disabled is **AFFIRMED**. Each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated: March 27, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge